FILED

NOV 24 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ________ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JON ROBERT BUTTON,

Plaintiff,

v. Civil Action No. 1:26-CV-00965-RP

KEOLIS TRANSIT SERVICES, LLC,

Defendant.

PLAINTIFF'S WRITTEN OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE (DKT. 35) AND ALTERNATIVE MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

TO THE HONORABLE ROBERT PITMAN, UNITED STATES DISTRICT JUDGE:

Plaintiff Jon Robert Button ("Plaintiff"), proceeding pro se, respectfully submits his Written Objections pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) to the Report and Recommendation entered on November 10, 2026, by United States Magistrate Judge Dustin M. Howell (Dkt. 35). In the alternative, should the Court agree that Plaintiff's removed state-court petition requires greater factual specificity under federal pleading standards, Plaintiff moves pursuant to Federal Rule of Civil Procedure 15(a)(2) for leave to file a First Amended Complaint prior to any dismissal.

I. INTRODUCTION AND SUMMARY OF OBJECTIONS

1. Plaintiff originally filed this action in Texas state court under Texas's fair-notice pleading standard, seeking redress for wrongful termination and a hostile and dangerous work environment. Defendant Keolis Transit Services, LLC ("Keolis") removed the case to this Court on diversity grounds (Dkt. 1) and immediately moved to dismiss Plaintiff's state-court petition with prejudice under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 3).
2. The Report and Recommendation (Dkt. 35) recommends granting Keolis's Motion to Dismiss and dismissing all of Plaintiff's claims with prejudice—without affording Plaintiff a single opportunity to amend his removed state-court pleading to conform to federal pleading standards.

3. Plaintiff specifically objects to the following findings and recommendations in the Report and Recommendation:(a) Objection 1 (Dkt. 35, at 7): The Magistrate Judge erred at the Rule 12(b)(6) stage by accepting Keolis's characterization that Plaintiff was terminated "for not surrendering [his] badge," rather than accepting as true Plaintiff's factual explanation that he accidentally lost his badge upon leaving for the union hall, signed in as a guest for two subsequent meetings at the main building without incident, was wrongfully labeled "threatening" and issued a retaliatory no-trespass order despite those peaceful post-incident meetings and Plaintiff's clean record free of public complaints, and was subjected to disparate and pretextual termination despite company policy imposing only a $50 replacement fee for a lost badge.(b) Objection 2 (Dkt. 35, at 7–8): The Magistrate Judge erred in stating that Plaintiff failed to assert a protected class on his administrative charge and recommending dismissal with prejudice for failure to exhaust administrative remedies and failure to plead prima facie elements, where Plaintiff expressly checked the "Discrimination" and "Age" boxes on his timely dual charge filed with the EEOC and the City of Austin Office of Equity and Inclusion (Dkt. 3-1, at 1), and where Plaintiff's protected status (age 74), 30 years of commercial bus-driving qualifications (including qualifying for a two-million-mile safety award, progressing toward a three-million-mile safety award, and maintaining a clean record free of public complaints), protected safety and occupational health complaints, and pretextual termination are readily pleadable facts.(c) Objection 3 (Dkt. 35, at 8 n.2 & 9): The Magistrate Judge erred in dismissing Plaintiff's hostile and dangerous work environment and retaliation claims without considering the totality of severe and pervasive physical hazards, treatable occupational medical conditions resulting from improper working conditions (including prolonged seated shifts without break relief that caused venous insufficiency and continual stasis dermatitis, as well as the lack of late-night bathroom facilities that forced Plaintiff into wooded areas, resulting in a severe mosquito bite and continuous bacterial infections), off-duty physical confrontation by management, retaliatory surveillance, wrongful labeling of Plaintiff as "threatening" accompanied by a retaliatory no-trespass order, and disparate enforcement of workplace rules, or permitting Plaintiff to plead those facts in an amended federal complaint.(d) Objection 4 (Dkt. 35, at 9–10): The Magistrate Judge erred in recommending dismissal with prejudice of Plaintiff's defamation claim regarding Keolis trainers' false accusations of "72 violations of incomplete stops at stop lights and running red lights"—contrary to Plaintiff's actual driving performance, in which Plaintiff qualified for a two-million-mile safety award, was on track for a three-million-mile safety award, maintained an excellent relationship with the riding public as demonstrated by his lack of public

complaints, and consistently received excellent evaluations during in-person shadow ride-alongs—on the ground that third-party publication was not yet pleaded, without granting Plaintiff leave to specify the third parties (including Capital Metro personnel and union representatives) to whom those false statements were published.(e) Objection 5 (Dkt. 35, at 10): Most fundamentally, the Magistrate Judge erred as a matter of Fifth Circuit law in recommending dismissal WITH PREJUDICE of a pro se plaintiff's removed state-court petition without first granting leave to file an amended complaint.

II. SPECIFIC OBJECTIONS TO THE REPORT AND RECOMMENDATION

A. Objection 1: Improper Crediting of Defendant's Version of the Badge Incident, Wrongful "Threatening" Label, and Pretextual No-Trespass Order (Dkt. 35, at 7)

4. On page 4 of the Report and Recommendation, the Magistrate Judge correctly states that under Rule 12(b)(6), a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" Dkt. 35, at 4 (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).
5. However, on page 7, the Report and Recommendation adopts Keolis's framing of Plaintiff's termination as resulting from Plaintiff "not surrendering [his] badge" after a performance meeting. Dkt. 35, at 7. That characterization resolves disputed factual issues in Keolis's favor at the pleading stage.
6. As Plaintiff has consistently maintained, Plaintiff did not refuse to turn in his badge, nor did Plaintiff engage in any threatening or uncooperative conduct—consistent with Plaintiff's courteous professionalism and lack of public complaints throughout his transit career. Rather, Plaintiff accidentally lost his badge when he exited the building to go to the union hall. Proof that Plaintiff no longer possessed the badge—and that management did not view Plaintiff as a threat—is established by the undisputed fact that Plaintiff returned to the main building and signed in as a guest on the visitor log for two subsequent meetings without any incident whatsoever. Only after those peaceful meetings did Keolis wrongfully label Plaintiff "threatening" and issue a retaliatory no-trespass order against him.
7. Moreover, under established workplace policy, losing an employee badge is not a terminable offense or an act of insubordination; the standard penalty for a lost badge is a $50.00 replacement fee. Keolis's decision to treat an accidental loss of a badge as a "refusal to surrender" company property, fabricate a post-hoc "threatening" allegation alongside a no-trespass order, and impose immediate termination—while imposing only a $50.00 replacement fee on other employees

who lose their badges—is direct circumstantial evidence of disparate treatment and pretext.

8. Furthermore, Keolis's internal records and representations reflect material factual discrepancies regarding Plaintiff's employment and the events leading to his termination, including inaccurately stating Plaintiff's hourly pay rate as $32.71 per hour when Plaintiff's actual hourly pay rate was $33.60 per hour, asserting an inaccurate departure date (claiming Plaintiff left on May 21, 2025 when Plaintiff's last paid day of work was May 10, 2025, four days before the off-duty May 14, 2025 confrontation), prompting Plaintiff to request the markup records for May 14, 2025 to verify whether Plaintiff was marked up for a scheduled route as required, and relying on contradictory statements among five internal witnesses, including a manager's omission of the fact that he thrust his fingers into Plaintiff's face while off the clock. Viewing these facts in the light most favorable to Plaintiff, Plaintiff's termination, the "threatening" accusation, and the no-trespass order were pretextual and unlawful.

B. Objection 2: Administrative Exhaustion (Checked "Discrimination" and "Age" Boxes on EEOC Form) and Pleading of Claims (Dkt. 35, at 7–8)

9. Plaintiff objects to the finding on page 7 that his EEOC charge did not assert discrimination based on a protected class and to the recommendation on pages 7 and 8 that his discrimination and retaliation claims be dismissed with prejudice.

10. First, contrary to the Report and Recommendation's reading of the narrative portion in isolation, Plaintiff expressly checked the "Discrimination" and "Age" boxes on his timely dual charge filed with the Equal Employment Opportunity Commission ("EEOC") and the City of Austin Office of Equity and Inclusion (Dkt. 3-1, at 1), alongside his factual summary identifying his termination over the badge incident following a workplace meeting. Under settled Fifth Circuit precedent, the scope of an EEOC charge is determined by reading the checked boxes together with the factual narrative—construing pro se charges with utmost liberality—and encompasses any discrimination or retaliation claim that can reasonably be expected to grow out of the charge. See Pacheco v. Mineta, 448 F.3d 783, 788–89 (5th Cir. 2006). By checking "Discrimination" and "Age" and describing his termination over a lost badge (contrary to Keolis's $50 replacement-fee policy), Plaintiff squarely exhausted his age discrimination and related retaliation claims under the ADEA and TCHRA—and additionally retains a standalone race/retaliation claim under 42 U.S.C. § 1981, which requires no EEOC exhaustion at all.

11. Second, on page 8, the Report and Recommendation faults Plaintiff's state-court petition for not explicitly alleging that he is a member of a protected class, was qualified for his position, or engaged in protected activity. Dkt. 35, at 8. Those omissions are purely formal pleading omissions resulting from the fact that Plaintiff drafted his petition in Texas state court prior to removal. In truth:
(a) Protected Class: Plaintiff is 74 years old (born November 15, 1952), placing him squarely within the protected class under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631(a), and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.051 (protecting individuals age 40 and older), as well as protected race/color provisions under Title VII and 42 U.S.C. § 1981;
(b) Qualification and Ongoing Ability to Work: Plaintiff worked as a professional commercial bus driver for 30 years, held all required commercial driving credentials, qualified for a two-million-mile safety award and was well on his way to acquiring a three-million-mile safety award, maintained an excellent relationship with the riding public as demonstrated by his lack of public complaints, consistently received excellent evaluations during in-person shadow ride-alongs, and remained fully qualified and physically able to perform all essential driving duties safely on an ongoing basis; and
(c) Protected Activity and Adverse Action: Plaintiff repeatedly reported serious occupational safety and health hazards—including blinding interior windshield glare, toxic bus exhaust fumes and defective brakes on assigned vehicles such as Bus 2205 (which was later used to falsely accuse Plaintiff of an unreported rollaway), and rigid route schedules depriving drivers of break relief and basic restroom access (which caused manageable occupational conditions including venous insufficiency and continual stasis dermatitis from prolonged seated shifts without break relief, as well as forcing Plaintiff into wooded areas due to the lack of late-night bathroom facilities, resulting in a severe mosquito bite and continuous bacterial infections). At all times, these conditions were treatable and managed through standard preventative care (such as compression stockings) and never prevented Plaintiff from safely performing his bus-driving duties or continuing his employment. Plaintiff further opposed discriminatory and unfair disciplinary practices prior to being terminated under the pretext of a lost badge, wrongfully labeled "threatening," and issued a retaliatory no-trespass order.

12. At the Rule 12(b)(6) stage, a plaintiff is not required to plead every evidentiary detail of a McDonnell Douglas prima facie case, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–12 (2002), and to the extent additional factual allegations are needed, Plaintiff should be permitted to state them in a First Amended Complaint.

C. Objection 3: Hostile and Dangerous Work Environment Allegations, Retaliatory No-Trespass Order, and Resulting Medical Harm (Dkt. 35, at 9)

13. Plaintiff objects to the conclusion on page 9 that his hostile work environment allegations fail as a matter of law. When considered collectively rather than in isolation, Plaintiff's allegations describe sustained, pervasive workplace hostility and physical endangerment—including management intentionally restoring blinding windshield glare after a prior manager had reduced it, prolonged exposure to toxic bus exhaust fumes and mechanical defects, rigid route scheduling and denial of adequate break and restroom relief (such as accusing Plaintiff of abusing a 9-minute restroom break when reaching the designated facility required 10 minutes, causing venous insufficiency and continual stasis dermatitis from prolonged seated driving without break relief, and failing to provide late-night bathroom facilities, which forced Plaintiff into wooded areas where he suffered a mosquito bite and continuous bacterial infections). At all times, these conditions were treatable and managed through standard preventative care and never prevented Plaintiff from safely performing his driving duties with basic route-break accommodations. Plaintiff was further subjected to retaliatory surveillance, an off-duty physical confrontation in which a manager thrust both fingers into Plaintiff's face, fabricated safety violations, and being wrongfully ruled "threatening" and issued a retaliatory no-trespass order despite Plaintiff having attended two subsequent meetings at the facility without incident.
14. Plaintiff respectfully requests that the District Judge reject dismissal with prejudice and allow Plaintiff to plead the full factual context connecting this pervasive hostility, retaliatory no-trespass order, and occupational medical harm to unlawful discrimination and retaliation.

D. Objection 4: Defamation Claim Based on False Accusations of 72 Traffic Violations Contrasted With Two-Million-Mile Safety Record, Clean Public Record, and Shadow Ride-Along Evaluations (Dkt. 35, at 9–10)

15. On pages 9 and 10, the Magistrate Judge recognizes that Plaintiff alleged Keolis trainers defamed him by falsely accusing him of "72 violations of incomplete stops at stop lights and running red lights," but recommends dismissal because Plaintiff's state-court petition did not yet identify a third party to whom those false statements were published. Dkt. 35, at 9–10.
16. In truth, Plaintiff's actual driving and customer-service performance was exemplary: Plaintiff qualified for a two-million-mile safety award, was on track for a three-million-mile safety award, maintained an excellent relationship with the

riding public as confirmed by his lack of public complaints, and consistently received excellent ratings during in-person shadow ride-alongs—directly refuting the fabricated claim of 72 stop-light and red-light violations. Falsely accusing a 30-year professional commercial bus driver of 72 red-light and stop-sign violations constitutes defamation per se under Texas law because it directly impugns Plaintiff's fitness and competence in his trade and profession. Plaintiff can readily cure the pleading deficiency identified by the Magistrate Judge by alleging in an amended complaint both his exemplary safety award, clean public-complaint record, and shadow ride-along evaluations and the specific third parties outside Keolis management—including Capital Metro personnel, union officials, and/or prospective transit entities—to whom those fabricated violation records were published.

E. Objection 5: Dismissal With Prejudice Without Leave to Amend Violates Settled Fifth Circuit Precedent (Dkt. 35, at 10)

17. Most importantly, Plaintiff objects to the recommendation on page 10 that this Court dismiss all of his claims WITH PREJUDICE without first granting him leave to amend. Dkt. 35, at 10.
18. Under binding Fifth Circuit precedent, "[g]enerally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998); accord Brewster v. Dretke, 587 F.3d 764, 767–68 (5th Cir. 2009) (holding that a pro se litigant should be offered an opportunity to amend before dismissal unless it is clear that the defects are incurable).
19. Here, Plaintiff has never amended his complaint in federal court. The operative pleading (Dkt. 1-1, at 13–17) was written for Texas state court before Keolis removed this action to federal court. Every single deficiency identified in the Report and Recommendation—pleading Plaintiff's age (74), 30 years of driving qualifications, two-million-mile safety award qualification, progress toward a three-million-mile safety award, clean public-complaint record, and excellent shadow ride-along performance, detailing his protected safety and health complaints and resulting medical conditions, pleading the lost-badge facts, $50 replacement-fee policy, wrongful "threatening" accusation, and retaliatory no-trespass order to establish pretext, and identifying third-party publication of the false 72 traffic violations—is curable by amendment. Dismissing Plaintiff's case with prejudice without a single opportunity to file a federal amended complaint would be unduly harsh and contrary to Federal Rule of Civil Procedure 15(a)(2) ("The court should freely give leave when justice so requires.").

## III. ALTERNATIVE MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT, EVIDENTIARY SUMMARY ALREADY PROVIDED TO DEFENSE COUNSEL, AND NOTICE OF WILLINGNESS TO ENROLL IN ELECTRONIC FILING

20. In the alternative, pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff respectfully moves this Court for leave to file a First Amended Complaint within twenty-one (21) days of the Court's order so that Plaintiff may formally set forth:
(a) His specific statutory and common-law causes of action (including claims under the ADEA, 29 U.S.C. § 621 et seq.; 42 U.S.C. § 1981; Title VII / TCHRA to the extent exhausted; and Texas common-law defamation);
(b) His protected status (age 74), 30 years of commercial bus-driving qualifications, two-million-mile safety award qualification and progress toward a three-million-mile safety award, excellent relationship with the public demonstrated by his lack of public complaints, excellent shadow ride-along performance evaluations, ongoing physical ability to perform his driving duties, protected workplace safety and discrimination complaints, and the resulting treatable physical and medical conditions caused by improper and hazardous working conditions—including venous insufficiency and continual stasis dermatitis caused by prolonged seated shifts without break relief, as well as the lack of late-night bathroom access that forced Plaintiff into wooded areas and caused a mosquito bite and continuous bacterial infections;
(c) The complete factual chronology of his lost badge, his peaceful guest sign-ins at two subsequent meetings, Keolis's $50 replacement-fee policy for lost badges, Keolis's wrongful "threatening" ruling and retaliatory no-trespass order, his actual hourly pay rate of $33.60 per hour (rather than Defendant's inaccurate $32.71 per hour figure), his May 10, 2025 last paid day of work, his request for the May 14, 2025 markup records to verify whether he was marked up for a scheduled route as required, and the contradictory witness accounts showing pretext; and
(d) Specific allegations identifying Plaintiff's exemplary safety record, clean public-complaint record, and shadow ride-along evaluations and the third parties to whom Keolis trainers published the false accusations of 72 red-light and stop-sign violations.
21. Concrete Evidentiary Basis Already Transmitted to Defense Counsel (20 Fact Witnesses and 8 Documentary Record Categories): To demonstrate to the Court that leave to amend is well-grounded in fact and far from futile, Plaintiff notes that he has already compiled and transmitted directly to Defense Counsel, Gregory Dimirsky of Littler Mendelson, P.C., in Plaintiff's pre-trial settlement proposal, a detailed twenty-item witness list and eight-item documentary production summary identifying the exact witnesses and company records

supporting Plaintiff's claims, including:

(a) Twenty (20) Fact Witnesses Across Key Evidentiary Groups:

(1) Former and current fixed-route and operations managers (including prior fixed-route manager Dan Peabody, who lowered interior bus lighting to alleviate windshield glare, and successor manager Yolanda White, who restored the glare condition and accused Plaintiff over a 9-minute restroom break);

(2) The Keolis manager who confronted Plaintiff off the clock on May 14, 2025 and thrust his fingers into Plaintiff's face, along with operations manager David Stringer;

(3) Keolis safety trainers and shadow ride-along evaluators who evaluated Plaintiff's driving performance as excellent, as well as the trainers responsible for compiling and publishing the false record of 72 stop-light and red-light violations;

(4) Keolis internal witness-statement authors (including Cynthia Roscoe and the five employees whose internal statements contain material inconsistencies regarding the alleged May 14, 2025 incident);

(5) The official who executed the no-trespass order and wrongful "threatening" designation against Plaintiff despite Plaintiff having signed in peacefully as a guest at two subsequent meetings;

(6) Transit radio control dispatchers, maintenance personnel, and ATU Local 1091 union representatives with direct knowledge of route scheduling, restroom break constraints, bus defect reports, and post-incident meetings.

(b) Eight (8) Categories of Documentary Records Sought and Identified to Defense Counsel:

(1) Complete payroll, timekeeping, pay-rate, markup, and clock-in/clock-out records—specifically including markup records for May 14, 2025 requested by Plaintiff to verify whether he was marked up for a scheduled route as required—establishing Plaintiff's actual hourly pay rate of $33.60 per hour (refuting Defendant's inaccurate $32.71 per hour figure) and showing that Plaintiff's last paid day of work was May 10, 2025 (contradicting Defendant's claim of a May 21, 2025 departure);

(2) Main building visitor and guest sign-in logs confirming that Plaintiff signed in as a visitor for two meetings after accidentally losing his badge;

(3) Company badge policies and billing/receipt records showing that lost employee badges are routinely resolved through a standard $50.00 replacement fee rather than termination;

(4) Fleet maintenance, inspection, and repair logs for assigned vehicles—specifically including Bus 2205, which Plaintiff reported for defective brakes and hazardous exhaust fumes, which was later used to falsely accuse Plaintiff of an unreported rollaway;

(5) Fixed-route schedules, time-point logs, and dispatch records demonstrating the absence of adequate break relief and late-night restroom access;
(6) All five internal witness statements, investigative notes, and emails concerning the alleged May 14, 2025 incident and termination decision;
(7) All safety award records (confirming Plaintiff's two-million-mile safety award qualification and progress toward three million safe miles), customer-service/complaint logs confirming the absence of public complaints against Plaintiff, and shadow ride-along evaluation sheets showing Plaintiff's excellent driving record, alongside all training, evaluation, and third-party communication records containing the false allegation of 72 stop-light and red-light violations; and
(8) All records, directives, and communications relating to the wrongful "threatening" ruling and issuance of the no-trespass order against Plaintiff.

Because Defense Counsel already possesses Plaintiff's full itemized list of 20 witnesses and 8 document categories, Defendant cannot claim surprise or prejudice if Plaintiff is granted leave to file a First Amended Complaint.

22. Practical Impact on Securing Legal Representation: Plaintiff respectfully informs the Court that he has actively sought to retain private employment counsel to represent him in this matter, but prospective attorneys have declined representation specifically because the docket currently reflects a pending recommendation for dismissal with prejudice. Granting Plaintiff leave to file a First Amended Complaint will not only cure the formal pleading omissions identified in the Report and Recommendation, but will also remove the procedural barrier preventing Plaintiff from retaining counsel to assist with the orderly prosecution of this case.
23. Willingness to Enroll in the Court's Electronic Filing and Email Notification System: Plaintiff further advises the Court that, if Your Honor prefers, Plaintiff is ready and willing to enroll in the Court's electronic filing and email notification system (CM/ECF pro se e-filing / electronic noticing) so that Plaintiff can receive orders, filings, and notices immediately by email and minimize mailing delays.

IV. CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jon Robert Button respectfully prays that the District Judge:

1. SUSTAIN Plaintiff's Written Objections and DECLINE TO ADOPT the recommendation in Document 35 to dismiss Plaintiff's claims with prejudice;

2. DENY Defendant Keolis Transit Services, LLC's Motion to Dismiss (Dkt. 3), or in the alternative, GRANT Plaintiff twenty-one (21) days' leave to file a First Amended Complaint curing any pleading deficiencies identified by the Court;
3. Permit Plaintiff to enroll in the Court's electronic filing / email notification system if preferred by the Court; and
4. Grant Plaintiff such other and further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

Jon R Button

Jon Robert Button, Pro Se

102 Lemuel Crawford Trail

Bastrop, Texas 78602

Telephone: (512) 910-1204

Email: jaybeekillerbee@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2026, a true and correct copy of the foregoing Plaintiff's Written Objections to the Report and Recommendation of the United States Magistrate Judge (Dkt. 35) and Alternative Motion for Leave to File First Amended Complaint was served via first-class United States mail, postage prepaid, and/or via electronic mail upon counsel of record for Defendant Keolis Transit Services, LLC, at the following address:

Jon R. Button

Gregory Dimirsky
Littler Mendelson, P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
Jon Robert Button, Pro Se